UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY EIDEM,<br>Plaintiff,<br>v.<br>VANG, *et al.*,<br>Defendants. | No. 1:23-cv-01198-JLT-EPG (PC)<br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br>(ECF No. 91)<br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

Plaintiff Anthony J. Eidem is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 2). This case proceeds on the second amended complaint dated April 8, 2024, against Defendants C. Vang and DOES 1-15 for deliberate indifference to inmate safety in violation of the Eighth Amendment, violation of the Banes Civil Rights Act, Negligence, and Negligent Infliction of Emotional Distress. (ECF Nos. 21, 37). Plaintiff's second amended complaint relates to three attacks by other inmates that took place on July 18, 2022, August 25, 2022, and September 8, 2022, at Avenal State Prison. (ECF No. 21 at 6).

On May 19, 2026, Defendant C. Vang filed a motion for summary judgment, arguing that there is no genuine dispute as to any material fact that Vang was deliberately indifferent, negligent, or violated the Bane Act. Additionally, he argues he is entitled to qualified immunity. In particular, Defendant Vang claims that he acted reasonably in response to Plaintiff's concern

that he would be attacked by inmates on July 18, 2022, and had no interaction with Plaintiff on August 25, 2022 and September 8, 2022. (ECF No. 91).

For the reasons set forth below, the Court will recommend that Defendant's motion for summary judgment be granted in part and denied in part.

## I. BACKGROUND

This case proceeds with Plaintiff's Second Amended Complaint, dated April 8, 2024. (ECF No. 21). The complaint concerns three inmate assaults against Plaintiff that took place in 2022 at Avenal State Prison. Plaintiff claims that he notified Defendant Vang and DOES 1-5 that he feared for his safety based on his commitment offense and threats he received. Plaintiff was transferred to a different housing unit three times on his arrival day but was still being threatened by inmates. Plaintiff informed Defendant Vang of the renewed threats and his fears, to which Vang informed Plaintiff he would be transferred to a different unit the following morning. However, Plaintiff alleges that Defendant Vang failed to protect him, and that he was later assaulted by another inmate, sustaining a laceration to his neck.

Specifically, Plaintiff's Second Amended Complaint alleges:

> **On the first occasion,** Plaintiff ANTHONY EIDEM suffered a six-inch laceration when another prisoner tried to cut his throat on July 18, 2022. This occurred after Plaintiff warned CDCR officials that he was in danger and being assured that they would "keep an eye on him." Instead, he was left unattended and kept in the same location for over an hour and twenty minutes, and in doing so failed to adequately Mr. EIDEM from a threat of serious harm of which CDCR officials were subjectively aware and which was sufficiently serious to require them to act.

(ECF No. 21, at p. 4).

Following the attack, he was transferred to another facility within the prison. Plaintiff was attacked two more times, once on August 25, 2022, and again on September 8, 2022.

Plaintiff second amended complaint asserts claims for Deliberate Indifference to Inmate Safety, Violation of Bane Civil Rights Act, Negligence and Negligent Infliction of Emotional Distress, and Section 1983. (ECF No. 21).

After granting a motion to dismiss by Defendant Green, the District Judge ordered that the case proceed on "Plaintiff's Second Amended Complaint against C. Vang and DOES 1-15." (ECF No. 37).

## II. DEFENDANTS VANG'S MOTION FOR SUMMARY JUDGMENT

### a. Defendant's Motion for Summary Judgment

Defendant Vang moved for summary judgment on May 19, 2026. (ECF No. 91). Defendant generally argues that the undisputed facts demonstrate that he acted reasonably in response to Plaintiff's warning that he would be attacked on July 18, 2022, and that he had no interaction with Plaintiff before the other two attacks.

Defendant's motion describes the events leading to the first attack as follows. On July 18, 2022, Plaintiff arrived at Avenal State Prison, which has six facilities, with each facility divided into "dorm style" housing units ("HU"). (ECF No. 91-2 at 8). Shortly after processing and being placed in Facility A, HU 110, Plaintiff was approached by two inmates who inquired what Plaintiff was committed for, to which Plaintiff admitted he was serving a sentence for rape. (*Id.*). Following the interaction, Plaintiff claims he was approached by other inmates who told Plaintiff he had to "roll up," or leave the housing unit because of his commitment offense. Plaintiff was transferred within the same facility to HU 130. (*Id.*). Plaintiff was subsequently transferred from this HU to HU 120 because HU 130 lacked an electrical outlet for his CPAP machine. (*Id.*).

Defendant's motion describes how, on July 18, 2022, Plaintiff informed Defendant Vang on two occasions that an inmate had threatened to attack Plaintiff due to his commitment offense. Defendant then states that:

> At some point, Defendant did check on Plaintiff. (DSUF 17.) Defendant also performed the required counts at 12:45 and 2:45 a.m. (*Id.*) Around 3 a.m., Plaintiff felt a slash across his neck, woke up, and saw two inmates running away. (DSUF 18.) Plaintiff felt blood coming from his neck and walked up to Defendant. (*Id.*) Defendant activated his personal alarm and summoned medical staff. (*Id.*) Plaintiff never saw or interacted with Defendant again. (DSUF 19.)

(ECF No. 91-2 at 8-9). Due to the attack, Plaintiff sustained a six-inch laceration to his neck that required stitches. (ECF No. 91-2 at 9).

Based on these facts, Defendants argue that they are entitled to summary judgment finding that Defendant Vang was neither deliberately indifferent to Plaintiff's safety nor negligent, because:

> Between 7 p.m. (arrival) and 3 a.m. (attack), the undisputed facts demonstrate that Defendant responded reasonably to the risk by watching Plaintiff from the podium area, performing count to confirm all inmates' wellbeing at 12:45 and 3 a.m., and confirming Plaintiff would be transferred in the morning—just hours after the attack occurred. (DSUF

> 13, 15, 17, 18.) For 8 hours, Defendant's response to risk was reasonable, and for 8 hours, his actions most likely prevented any attack.

(ECF No. 91-2 at 13). Moreover, Defendant argues that (1) the prison only had dorm style housing units, so Plaintiff was unable to be transferred to a single cell; (2) Plaintiff had already been transferred numerous times on his first day of arrival; (3) housing unit options were limited because of Plaintiff's CPAP machine; (4) Plaintiff denied suicidal ideation, which would have transferred him to a mental health crisis bed or placed him on suicide watch; and (5) Defendant had no authority to transfer Plaintiff. (ECF No. 91-2 at 13-14.).

Turning to the second and third incidents, Defendant argues that Defendant was not involved in any way in the second and third incidents that occurred on August 25 and September 8, 2022. (ECF No. 91-2 at 14). Defendant did not work in the building where the incidents occurred. (*Id.*).

Defendant also argues he is entitled to qualified immunity on the Eighth Amendment claim.

Defendant similarly argues that, for the same reasons related to the deliberate indifference claim, Defendant is also not liable under the Bane Act. Nor was defendant negligent.

In support of the motion for summary judgment, Defendants submit portions of Plaintiff's deposition and a declaration of defendant Vang.

Defendant also provided a statement of undisputed facts in support of the motion for summary judgment as required under Local Rule 260(a). (ECF No. 91-3 at 1-6). Additionally, Defendant also provided Plaintiff with a *Rand*[1] warning informing him what is required to oppose summary judgment under Federal Rule of Civil Procedure 56 and a summary of Local Rule 260 regarding statements of undisputed facts. (ECF No. 91-1 at 1-3).

**b. Plaintiff's Opposition**

Plaintiff timely filed an opposition motion on June 29, 2026. (ECF No. 96). Plaintiff filed a revised opposition on July 8, 2026. (ECF No. 100). Plaintiff's opposition begins by stating he is without his case file because CDCR took his legal materials during transfer, and the file has yet to be returned. (ECF No. 100 at 2).

[1] *See Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

Plaintiff also states that there is a genuine dispute of material fact as to whether Defendant Vang acted reasonably in protecting Plaintiff's safety, stating:

> Defendant argues that Vang acted reasonably because he allegedly watched Plaintiff from the podium, performed counts at 12:45 and 2:45 a.m., and told Plaintiff he would be transferred in the morning. Def.'s Mem., Doc. 91-2. p. 13 1L. 12-18; p. 14 1L. 1-6 (PDF pp. 17-18). But that argument asks the Court to accept Defendant's preferred inference. A jury could draw the opposite inference: after repeated warnings of active threats, Vang left Plaintiff in the same open dorm, told him to return to bed, did not remove him from danger, did not summon a supervisor, did not initiate protective custody, did not separate him from the threatening inmates, did not keep continuous watch, and Plaintiff's neck was rut while Vang was supposedly monitoring him.
>
> Defendant characterizes the delay before the attack as proof Vang's actions 'most likely prevented' harm. Def.'s Mem. Doc. 91-2. p. 13 1l. 17-18 (PDF p. 17). A jury could instead find that the passage of time gave Vang ample opportunity to obtain higher authority, document the threat, request assistance, move Plaintiff temporarily to a safer location, arrange emergency separation, maintain direct observation, or otherwise protect a newly arrived inmate facing a specific and repeated threat.

(ECF No. 100 at 5). Additionally, Plaintiff argues that there is a dispute regarding Defendant's timeline. Plaintiff argues that when Defendant claims to have performed his checks at 12:45 a.m. and 2:45 a.m., Plaintiff was no longer in the housing unit. Plaintiff argues the assault occurred around 11:00 p.m. and not 3:00 a.m. He argues this is supported by medical records demonstrating he arrived at Coalinga Regional Medical Center at approximately 12:46 a.m. (ECF No. 100 at 5-6).

As for the second and third attacks, Plaintiff concedes that defendant Vang did not personally work in Facility C and did not participate in the second and third incidents. Instead, he argues "the later assaults remain relevant to damages, to the seriousness of the danger Plaintiff reported, and to Plaintiff's evidence that officials redirected his safety concerns into a false self-harm narrative instead of protecting him." (*Id.* at 7).

Regarding the defense of qualified immunity, Plaintiff argues it does not apply, as defendant Vang knew of a substantial risk to Plaintiff's safety, acknowledged the safety concern, told Plaintiff he would keep an eye on him, sent him back to his bed, and Plaintiff suffered an injury. Plaintiff contends no reasonable officer "could believe the Eighth Amendment allowed him to ignore or minimally respond to a specific and repeated threat of inmate violence in an open dorm setting. (*Id.* at 8).

Moving next to the Bane Act violation, Plaintiff argues that a jury may find Defendant Vang recklessly disregarded Plaintiff's safety risk, which would establish the specific intent require under the Bane Act. (*Id.* at 9).

Regarding the final claim of negligence, Plaintiff argues

> A correctional officer responsible for an open dorm containing approximately 190 inmates, who receives repeated warnings that a newly arrived prisoner is being threatened because of his commitment offense, owes a duty of reasonable care. Whether telling Plaintiff to return to bed and waiting until morning satisfied that duty is a classic jury question.

(ECF No. 100 at 9).

Finally, Plaintiff argues summary judgment should be denied or deferred under Rule 56(d) because

> Plaintiffs legal property, exhibits, discovery, deposition materials, SAC, and case file were confiscated by CDCR during transfer and have not been returned. Plaintiff cannot fairly oppose summary judgment where Defendant and the Attorney General possess the litigation record while Plaintiff has been deprived of it.
>
> The missing records are directly material to this motion. They include the hospital and transportation records that Plaintiff contends show he was at the clinic, in an ambulance, or at Coalinga Regional Medical Center during times Vang claims to have checked him in the dorm. They include the CDCR 1824 safety request dated August 14, 2022. They include medical records concerning the August 25 nasal fracture and September jaw injury. They include Plaintiffs SAC, exhibits, notes, discovery, and deposition materials. Those materials are essential to fully oppose Defendant's motion and to show why Defendant's asserted undisputed facts are disputed.

(ECF No. 100 at 10).

Plaintiff did not provide any supporting documentation in his revised opposition, however, in his original opposition, Plaintiff provided the following in support of his opposition: (1) Plaintiff's declaration in support of request to deny or defer under Rule 56(d) declaration; and (2) Plaintiff's declaration in opposition to defendant Vang's motion for summary judgment. Plaintiff did not provide statement of undisputed facts in support of the motion for summary judgment as required under Local Rule 260(a).

**c. Defendant's Reply**

Defendant filed a reply on July 13, 2026. (ECF No. 101).

Regarding the second and third incidents, Defendant argues that as Plaintiff does not dispute that Vang was not involved in or responsible for the incidents on August 25 or September

8, 2022. Further, Defendant argues that Plaintiff's argument that the second and third incidents are relevant to damage and the seriousness of the danger he faced should not survive summary judgment because there are no facts that demonstrate defendant Vang's actions or inactions surrounding the second and third incidents led to any harm. (*Id.* at 2).

**d. Plaintiff's Motion for Leave to File a Sur-Reply**

On July 23, 2026, Plaintiff filed a motion seeking leave to file a sur-reply to Defendant's reply. (ECF No. 102). In his motion, Plaintiff argues that a sur-reply is appropriate because Defendant introduced "new evidence, new arguments, or attempts to cure deficiencies identified in the opposition without leave to respond." (*Id.* at 2). Attached to the motion, Plaintiff provides the sur-reply. (*Id.* at 5-8). He argues that Defendant attempts to improperly resolve disputed facts in his favor and that Defendant attempts to argue his version of events should be accepted. (*Id.* at 6). Additionally, Plaintiff claims Defendant's reply attempts to cure deficiencies in the original motion for summary judgment by offering "additional explanations and arguments that were not fully presented in [his] original motion." (*Id.*).

The Court shall deny Plaintiff's request to file his sur-reply, as no leave was granted and the Court finds the sur-reply unnecessary. Nevertheless, the Court notes that it has reviewed the sur-reply and arguments presented by Plaintiff, the sur-reply does not alter any of the Court's analysis of Defendant's motion for summary judgment.

## III. EVIDENCE PRESENTED BY THE PARTIES

The Court next reviews the evidence presented by the parties regarding the three separate attacks suffered by Plaintiff at the hands of other inmates while incarcerated at Avenal State Prison and the relation of those attacks to defendant Vang.

**a. Defendant Vang's Declaration**

Defendant Vang declared under the penalty of perjury that:

> After the night or morning of July 18-19, 2022, I never saw or interacted with Plaintiff again. I did not work on Facility C during the times relevant to the Complaint.
>
> As a floor officer my duties included random searches, safety inspections, and conducting count. The other floor officer and I were the only officers on duty in

> HU 120, which housed approximately 190 inmates.
>
> On the night of July 18, I did not have authority to transfer Plaintiff to a different housing unit.
>
> After the incident, Plaintiff approached me and I activated my personal alarm.
>
> I was required to conduct a count (attendance check) at 12:45 a.m. and 2:45 a.m. I would walk around the bottom and top tiers to confirm inmates were in their beds.
>
> When not performing specific duties, I was normally located in the podium area in the dayroom. I could see Plaintiff's bunk from the officers' podium.
>
> On the morning of July 19, 2022, I performed the required counts at 12:45 and 2:45 a.m. After the incident, CDCR staff searched but were unable to locate a weapon
>
> As an officer, I was not responsible for Plaintiff's housing assignments.
>
> I never deliberately ignored the serious risk to Plaintiff's health and safety or negligently failed to perform my duties as a correctional officer.

(ECF No. 91-5 at 1-2) (paragraph numbers omitted).

**b. Plaintiff's Deposition**

On November 5, 2025, Plaintiff was deposed by Deputy Attorney General Gilmor. (ECF No. 91-4). During the deposition, Plaintiff recounted his initial arrival at ASP and his interaction with the two inmates who sought Plaintiff's commitment information. (*Id.* at 9). Plaintiff described being told he had to "roll up" or get out of there. (*Id.* at 10). Plaintiff eventually goes on to describe the incident that occurred upon his transfer to the third building.

> Then I was taken to the third building. So we are up to speed. When I was taken to the third building, I was walked. And this time I had three -- if I remember correctly, three COs with me. By that time, it was yard --there was yard. So the people from the first building that told me to roll up that were aware of my charges were now with everybody from all the buildings.· So by that time, now I have all of my stuff, and I'm being transferred to the other building, and they are pointing at me and they are talking, and they are making it very well known that I am being pointed out.
>
> I got to the third building, and I -- I had – the bedding was there and everything. I went to set up, and I had some guy saying that I had to get out of there. So I went to this CO Vang, and I told them, hey, these guys are telling me to roll up. And he stated that I have already been transferred. I think it was evening at this time. I've already been transferred to two other buildings, and I was staying in this yard. I'm staying in that yard, but he will keep an eye on me. I went back and said, hey, they are not -- to these inmates, and I said, I am

> here, and they will not let me go anywhere. And the inmates were, like, you need to man down. I didn't know what man down was. So when they told me to man down, I thought they were punking me or, like, hey man, get down. So I didn't know at that time. So I did not know, and I told them I was not going to man down because I didn't know what that meant. And they said okay, you're going to get -- you're going to get it. I told CO Vang, these guys are telling me you're going to get. And they're going do some stuff. He told me I am going to keep an eye on you that night. Just so you are aware, you are going to be transferred in the morning, were his exact words. I will remember that. So I will be honest I was expecting to get beat up that night. They would not listen to me. They weren't transferring me, and I thought, for sure, I was going to get beat up. I put my -- I had been up since 3:00 o'clock in the morning. I put all my blankets on, and I had my boxers on, and I had my CPAP machine on. And I was expecting for a fight, but I was like okay. I'm going to have to fight. I've been put in this position. They are not going to let me go. I am, like, hey -- and mind you where my mental state -- where my mental space is at this time. So I am laying in bed.· I have been up since 3:00 o'clock in the morning, and I feel a hand or a pressure -- I don't even want to say it's a hand – a pressure go across my neck. Now, I did doze off for a second, but I was expecting, like -- I was expecting to jump up and just, like, fight for my life. I honestly thought I was going to get punched in the face or something. When I felt the pressure across my neck, I woke up and saw the back of two inmates run out from the housing part of the dorm setting. Because there are different little pods in the dorm. I saw that and put my hand to my neck, and when I lifted up my hand, I was bleeding profusely.
>
> There was blood all over the place. I went into shock. And I just walked up -- I didn't know what to do. I did not know what to do. And I am bleeding. So I was trying to stop the bleeding with my hands, and I walked up to CO Vang, and the look on his face was shock. And he hit a buzzer, and they sat me down in the common area of that dorm. Then the ambulance showed up and they took me from there.

(ECF No. 91-4 at 15-17).

When asked if he ever saw defendant Vang after the night of the first attacked, Plaintiff stated, “I don’t recall.” (*Id.* at 31 ¶¶ 10, 12). Plaintiff was asked if he ever saw defendant Vang again between the first and second incident, to which Plaintiff stated, “[n]ot to my knowledge.” (*Id.* at 53 ¶ 14-16).

**c. Plaintiff’s Declaration**

Plaintiff also submitted a declaration that describes the same events set forth in his deposition. (ECF No. 96 at 11-12).

## IV. LEGAL STANDARDS

**a. Motion for Summary Judgment**

Summary judgment in favor of a party is appropriate when there “is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted).

**b. Failure to Protect**

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). Under the objective prong, the alleged deprivation must be sufficiently serious. *Id*. Under the subjective prong, a prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842 "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Neither negligence nor gross negligence warrant liability under the Eighth Amendment. *Farmer,* 511 U.S. at 835-36 & n4. An "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

**c. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

receded from, *Pearson v. Callahan*, 555 U.S. 223 (2009) (the two factors set out in *Saucier* need not be considered in sequence).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' " *Mattos v. Agarano,* 661 F.3d 433, 442 (9th Cir. 2011) (quoting *al-Kidd*, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Estate of Ford,* 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). An official's subjective beliefs are irrelevant. *Inouye,* 504 F.3d at 712.

At the summary judgment phase, although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. *See Torres v. City of Madera,* 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury, [and] only in the absence of material disputes is it a pure question of law.") (internal quotation marks and citations omitted).

**d. Bane Act**

The Bane Act forbids conduct by any person, "whether or not acting under color of law," who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of

rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...." Cal. Civ. Code § 52.1(a). A plaintiff "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Hearns v. Gonzales*, No. 1:17-CV-00038-AWI-GSA-PC, 2018 WL 1790800, at *1 (E.D. Cal. Apr. 16, 2018) (*quoting Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67 (Cal. Ct. App. 2015)). Moreover, a Bane Act claim cannot proceed where there is no constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018) (describing a constitutional violation as a "predicate" for a Bane Act claim).

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Id.* (*quoting Austin B. v. Escondido Union School Dist.,* 149 Cal.App.4th 860, 883 (Cal. Ct. App. 2007). "[T]he Bane Act requires that a defendant had a specific intent to violate the plaintiff's protected rights." *Luttrell v. Hart*, No. 5:19-CV-07300-EJD, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020). "Specific intent does not require a showing that a defendant knew he was acting unlawfully; '[r]eckless disregard of the 'right at issue' is all that [i]s necessary.'" *Id.*

Finally, regarding the specific intent inquiry, if a plaintiff adequately pleads a claim for deliberate indifference, which requires a pleading of reckless disregard, then he has sufficiently alleged the intent required for the Bane Act claim." *Luttrell*, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (*citing Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018)).

**e. Negligence**

"'Ordinary negligence,' an unintentional tort, consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Ct.*, 41 Cal. 4th 747, 753 (2007). Under California law, [t]he elements of negligence are:

> (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the

> defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).

*Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (internal citation and quotation marks omitted). "'Proximate cause,' as element of negligence claim under California law, is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced injury or damage complained of and without which such result would not have occurred." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1165 (N.D. Cal. 2009), *amended in part*, No. C 05-02935 MEJ, 2009 WL 10736653 (N.D. Cal. Sept. 8, 2009). California has adopted sections 442 through 453 of the Restatement (Second) of Torts. *Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1120 (S.D. Cal. 2015), *aff'd*, 860 F.3d 1193 (9th Cir. 2017). "Criminal conduct which causes injury will ordinarily be deemed the proximate cause of an injury, superseding any prior negligence which might otherwise be deemed a contributing cause." *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1449 (1993); Restatement (Second) of Torts § 448. However, if the tortfeasor's negligent conduct affects the likelihood that a third party may act in a particular manner, the third party's criminal conduct does not prevent the tortfeasor from being liable. *Id*. "The rule stated in this Section applies when the actor's conduct creates a situation which is utilized by a third person to inflict intentional harm upon another or provides a temptation to do so." *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 39 Cal. App. 5th 995, 1023 (2019).

In California, it has been "repeatedly recognized that "[t]he negligent causing of emotional distress is not an independent tort, but the tort of negligence." *Burger v. Superior Court,* 2 Cal.4th 1062, 1072 (1992). "The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965 ,984 (1993).

there is no independent tort of negligent infliction of emotional distress." *Potter*, 6 Cal. 4th at 984. "The tort is negligence." *Id*.

## V. ANALYSIS

### a. Failure to Protect

As an initial matter, the Court recommends granting summary judgment regarding the inmate attacks that occurred on August 25, and September 8, 2022. The undisputed evidence

shows that defendant Vang was not present, nor did he work in the facilities where the incidents occurred. In his opposition, Plaintiff concedes that Defendant was not involved in the second and third incidents on August 25 and September 8, 2022. Specifically, Plaintiff states in his declaration:

> I was later assaulted again and suffered a broken nose and a dislocated jaw. I understand Defendant argues Vang did not personally work in those later locations. My main claim against Vang is that he failed to protect me before the first attack after I personally warned him of the danger and he acknowledged my safety concern.
>
> The later assaults are still part of my damages…

(ECF No. 96 at 11).

Thus, based on the evidence presented, the undisputed facts demonstrate Defendant had no involvement with Plaintiff after the morning of July 19, 2022. Defendant Vang did not have any information about any potential threats to Plaintiff on those dates and could not have taken any action to prevent the attacks. Therefore, Plaintiff cannot prove causation as required for any claim brought under Section 1983 claim. *Chaudhry*, 68 F.4th at 1169-70 & n.11-12 (the plaintiff must establish that the defendant's actions, or inactions, caused the claimed injury, which requires both causation in fact, also called but-for causation, and proximate cause).

The Court thus recommends granting summary judgment as to all causes of action to the extent they concern the inmate attacks on August 25, and September 8, 2022.

The Court next turns to the first attack, on July 18-19, 2022. The facts regarding this attack are relatively undisputed and meet many of the elements of a deliberate indifference claim. Regarding the objective prong, the alleged deprivation was sufficiently serious because Plaintiff suffered a six-inch laceration to his neck and received stitches. Regarding the subjective prong, it is also undisputed that Defendant Vang knew of the risk because Plaintiff informed him twice that inmates had threatened to attack him. Moreover, Plaintiff had previously been transferred twice based on similar information, showing that such threats were considered serious in the institution at that time. Similarly, Defendant Vang concedes that he was aware of the threats and drew the inference that Plaintiff was at risk of attack.

The central question is whether Defendant Vang has submitted sufficient evidence to show that it is undisputed that he took reasonable measures to abate the risk. Regarding this

issue, Defendant Vang's declaration states that:

> On the night of July 18, I did not have authority to transfer Plaintiff to a different housing unit.
>
> After the incident, Plaintiff approached me and I activated my personal alarm.
>
> I was required to conduct a count (attendance check) at 12:45 a.m. and 2:45 a.m. I would walk around the bottom and top tiers to confirm inmates were in their beds.
>
> When not performing specific duties, I was normally located in the podium area in the dayroom. I could see Plaintiff's bunk from the officers' podium.
>
> On the morning of July 19, 2022, I performed the required counts at 12:45 and 2:45 a.m. After the incident, CDCR staff searched but were unable to locate a weapon
>
> As an officer, I was not responsible for Plaintiff's housing assignments.

(ECF No. 91-5 at 1-2) (paragraph numbers omitted).

In opposition, Plaintiff argues that Defendant Vang's response was not reasonable because "after repeated warnings of active threats, Vang left Plaintiff in the same open dorm, told him to return to bed, did not remove him from danger, did not summon a supervisor, did not initiate protective custody, did not separate him from the threatening inmates, did not keep continuous watch, and Plaintiff's neck was rut while Vang was supposedly monitoring him. . . . A jury could instead find that the passage of time gave Vang ample opportunity to obtain higher authority, document the threat, request assistance, move Plaintiff temporarily to a safer location, arrange emergency separation, maintain direct observation, or otherwise protect a newly arrived inmate facing a specific and repeated threat." ((ECF No. 100 at 5). Plaintiff also argues that Defendant Vang did not in fact check on him during his routine checks because those routine checks took place at 12:45 a.m. and 2:45 a.m., when Plaintiff was no longer in the housing unit. Plaintiff argues the assault occurred around 11:00 p.m. and not 3:00 a.m. He argues this is supported by medical records demonstrating he arrived at Coalinga Regional Medical Center at approximately 12:46 a.m. (ECF No. 100 at 5-6).

Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, the Court recommends denying summary judgment on Plaintiff's failure to protect claim regarding the July 18, 2022 incident because a reasonable jury could find that Defendant Vang did not take

reasonable measures to abate the risk. *See Torres v. City of Madera,* 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury, [and] only in the absence of material disputes is it a pure question of law.") (internal quotation marks and citations omitted).

Again, Defendant Vang's motion argues that he took three measures: (1) keeping watch over Plaintiff, (2) performing two checks, and (3) arranging for Plaintiff to be moved in the morning. Regarding the first action, there is a dispute of fact as to whether and how closely Defendant Vang kept watch over Plaintiff that night. After all, Defendant Vang did not witness the attack, so could not have been watching Plaintiff when it happened. Moreover, Defendant Vang's declaration falls short of saying that he in fact kept watch over Plaintiff after learning of the threats. Instead, his declaration merely states "When not performing specific duties, I was normally located in the podium area in the dayroom. I could see Plaintiff's bunk from the officers' podium." (ECF No. 91-5 at 1-2). Thus, Defendant Vang has not put forth undisputed evidence that he took the measure of keeping watch over Plaintiff in response to the threats.

As for the other two measures—checking on Plaintiff twice during the night and arranging for him to be transported in the morning—these measures would not have abated the risk of attack for most of the night.

There is also a dispute of fact as to whether Defendant Vang actually checked on Plaintiff during the required counts. Defendant Vang's declaration states that "[o]n the morning of July 19, 2022, I performed the required counts at 12:45 and 2:45 a.m.," but does not explicitly state that he checked on Plaintiff in particular. Moreover, Plaintiff claims that Defendant Vang did not check on Plaintiff during those times because "medical records demonstrate[e] he arrived at Coalinga Regional Medical Center at approximately 12:46 a.m." (ECF No. 100 at 5-6).

Moreover, it is undisputed that Defendant Vang did not take other measures to abate the risk. As Plaintiff points out, Defendant Vang "did not remove him from danger, did not summon a supervisor, did not initiate protective custody, did not separate him from the threatening inmates, [and] did not keep continuous watch." (ECF No. 91-2 at 1-2). Although Defendant Vang states that "he did not have authority to transfer Plaintiff to a different housing unit" (ECF 91-2 at 9), he does not deny the ability to contact a supervisor, initiate protective custody, or

move Plaintiff to another location within the dorm.

Thus, the Court recommends denying Defendant Vang's motion for summary judgment on Plaintiff's failure to protect claim regarding the incident on July 18-19, 2022, but granting summary judgment on Plaintiff's failure to protect claim as to the second and third incidents on August 25, and September 8, 2022.

**b. Qualified Immunity**

The Court next addresses whether Defendant Vang is nevertheless entitled to qualified immunity based on his response to the threats during the first incident.

Defendant's argument is based on the same reasoning as his underlying argument regarding the failure to protect claim, arguing that "[t]he undisputed facts demonstrate that he did not disregard the safety risk to Plaintiff. Defendant acknowledged Plaintiff's safety concerns, watched over him, performed security checks, and summoned medical staff after Plaintiff was attacked. He is therefore entitled to qualified immunity on the first prong because he did not violate Plaintiff's constitutional rights." (ECF No. 91-2 at16).

However, defendant acknowledged that it was clearly established at the time that prison officials had a duty to protect prisoners from violence at the hands of other prisoners, and that prison officials violate the Eighth Amendment then they are deliberately indifference to such a risk. (ECF No. 91-2, at 11). It is also well established that "[l]iability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Thus, because Plaintiff has presented sufficient evidence that Defendant Vang did not take reasonable measures to abate a risk of inmate violence, that Defendant Vang knew Plaintiff faced, Defendant Vang is not entitled to qualified immunity under clearly established law regarding the first incident.

**c. Bane Act**

The Court now decides whether or not Defendant violated the Bane Act when he failed to protect Plaintiff from the knife attack during the first incident.[2]

---

[2] As stated above, the Court finds that Defendant Vang is entitled to summary judgment on all causes of

Analyzing the first incident, Defendant argues the undisputed facts demonstrate that Defendant did not recklessly disregard Plaintiff's safety for the same reasons discussed above. Based on these facts, Defendant argues Plaintiff has no evidence that Defendant "had a specific intent" to violate his constitutional rights. *Luttrell*, 2020 WL 5642613, at *5. (ECF No. 91-2 at 18).

However, even according to Defendant's motion, "if a plaintiff adequately pleads a claim for deliberate indifference, *which requires a pleading of reckless disregard*, then he has sufficiently alleged the intent required for the Bane Act claim." *Luttrell*, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (*citing Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018))(emphasis added); (ECF 91-2 at17).

As described above, the Court finds that there exists a genuine dispute of fact as to whether defendant Vang was deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment during the first incident, which necessarily means Vang recklessly disregarded the threat to Plaintiff.

Thus, the Court recommends denying Defendant's motion for summary judgment regarding Plaintiff's Bane Act claim as to the first incident only.

**d. Negligence**

The Court also recommends denying summary judgment as to Plaintiff's negligence claim against Defendant Vang for the July 18-19, 2022, incident. Defendant's motion on this cause of action is again based on the same argument, i.e., that Defendant Vang took reasonable measures to abate the risk. The Court recommends denying summary judgment as to this cause of action for the same reasons discussed above.

Defendant Vang additionally briefly argues that even if he were negligent, the inmate attackers' criminal conduct was the superseding cause of Plaintiff's injury. (ECF No. 91-2 at 21). However, as Defendant's own cited cases explains "[i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such

---

action based on the second and third incidents.

an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." *Koepke v. Loo* 18 Cal.App.4th 1444, 1449 (1993). Here, Defendant Vang's alleged negligence concerns his reaction to the hazard of inmate attacks. Thus, the fact that the inmate attacked Plaintiff does not prevent Defendant Vang from being liable for negligence in failing to prevent that attack.

In the motion for summary judgment, Defendant also argues that Negligent Infliction of Emotional Distress is not a cause of action that is separate from that of Negligence. While this is correct, this does not preclude recovery of emotional distress stemming from negligent conduct. Indeed, if a defendant, such as Vang, has assumed a duty to an individual in which the emotional condition of the individual is an object, recovery is available if emotional distress occurs as the result of a breach of a legal duty by a defendant. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993) ("The lesson of these decisions is: unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty."). However, it is not enough that the breach occurs, but that breach must also at least threaten physical injury. *Id.* ("Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests."); *citing Cooper v. Superior Court* (1984) 153 Cal.App. 3d 1008, 1012-1013.) Here, as explained above, Defendant Vang had a duty to protect Plaintiff from inmate violence, and has alleged that he suffered both physical and emotional injuries from the violence that occurred. Accordingly, Plaintiff may be entitled to damages for his emotional distress as part of his negligence claim against Defendant Vang, regarding the first assault.

For these reasons, the Court recommends that Defendant Vang's motion for summary judgment be denied regarding Plaintiff's claims of negligence and negligent infliction of emotional distress for the first incident only.

**e. Rule 56(d)**

Finally, the Court addresses Plaintiff's request to deny or defer summary judgment under Federal Rule of Civil Procedure 56(d). (ECF No. 96 at 8-9).

Rule 56(d) provides as follows:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d)(1)-(3).

As the Ninth Circuit has noted, "[t]o prevail on a request for additional discovery under Rule 56(d), a party must show that: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) (citation and quotation marks omitted).

Upon consideration, the Court recommends denying Plaintiff's Rule 56(d) request because as the record demonstrates, the Court recommends denying Defendant's motion for summary judgment as to the first incident.

In his declaration, Plaintiff states his legal materials were taken during a recent prison transfer and he is without his case file. (ECF No. 96 at 8). Within this case file are "exhibits, discovery, deposition materials, Second Amended Complaint, and litigation file…" (*Id.*). While these documents very well may show genuine disputes of material fact related to the first incident, as the Court recommends denying summary judgment on the first incident, Plaintiff will not require the documents for the purposes of his opposition. Further, as the Court has recommended, Defendant Vang was not present during the second and third incidents, nor did he work in the building where those incidents occurred, so any documentation that Plaintiff is without would not assist him in demonstrating otherwise. Indeed, Plaintiff himself concedes in his opposition and admits during his deposition that he did not see defendant Vang following the morning of the first incident.

As such, the Court recommends denying Plaintiff's request to either deny or defer summary judgment under Rule 56(d).

\\\

\\\

## VI. CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS RECOMMENDED that

1. Defendant's motion for summary judgment (ECF No. 91) be **GRANTED IN PART** and **DENIED IN PART** as follows:
   a. Summary Judgment as to Plaintiff's first cause of action, deliberate indifference in violation of the Eighth Amendment against Defendant Vang is DENIED;
   b. Summary Judgment as to Plaintiff's second cause of action, violation of the California Bane Civil Rights Act for the incident on July 18, 2022, is DENIED, however as to the incident on July 26, 2022, summary judgment is GRANTED;
   c. Summary Judgment as to Plaintiff's third cause of action for negligence and negligent inflection of emotional distress for the incidents that occurred from July 18, 2022, through September 28, 2022 is DENIED as to the incident that occurred on July 18, 2022; however as to the remaining incidents, summary judgment is GRANTED;
   d. Summary Judgment as to Plaintiffs fourth cause of action, deliberate indifference in violation of the Eighth Amendment on August 25 and September 8, 2022, is GRANTED; and
   e. Summary Judgment as to violation of the Bane Act on August 25 and September 8, 2022, is GRANTED.
2. Plaintiff's request to defer or deny the motion for summary judgment under Federal Rule of Civil Procedure 56(d) is DENIED.
3. Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 102) is DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages,

including exhibits. Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 29, 2026**

/s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE